## Webster and Goldsmith's Appeal.

| 86 | 409 |
| 163 | 635 |
| 86 | 409 |
| 180 | 527 |

While subrogation is founded on principles of equity and benevolence, and may be decreed where no contract exists, yet it will not be decreed in favor of a mere volunteer, who without any duty, moral or otherwise, pays the debt of another.   It will not arise in favor of a stranger, but only in favor of a party who, on some sort of compulsion, discharges a demand against a common debtor.

[Webster and Goldsmith's Appeal.]

March 12th 1878.  Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the Court of Common Pleas of *Luzerne county:* Of January Term 1878, No. 232.

Appeal from the decree of the court, Harding, P. J., confirming the report of the auditor appointed to distribute the fund arising ftom a sheriff's sale of the real estate of Jacob Adams.  The facts are sufficiently stated in the opinion of this court.

*S. J. Strauss* and *McLean & Jackson,* for appellants.—Bauer's claim must be by subrogation.  When the note was paid to which the judgment was collateral, the judgment was dead and could not be revived by the assignment: Erb's Appeal, 2 P. & W. 296.  His equity, if it exists at all, was subsequent in point of time to appellants' judgments.  Baur is a volunteer and must claim subrogation in pursuance of a direct contract.  It will not arise in favor of a stranger, but only in favor of a party who, on some sort of compulsion, discharges the debt against a common debtor.  These principles do not apply in favor of volunteers.  They can obtain the right of substitution only by contract : Mosier's Appeal, 6 P. F. Smith 76; Hoover *v.* Epler, 2 Id. 522; Wallace's Estate, 9 Id. 406; Talmage *v.* Burlingame, 9 Barr 21.  Baur was under no compulsion, moral or legal, to discharge Banker's liability upon the note.

It has never been permitted to a subsequent surety to change the liability of a former one without his knowledge or consent, and then to demand subrogation as against him, and consequently not against those who are previously interested to prevent such subrogation : Talmage *v.* Burlingame, *supra ;* Schnitzel's Appeal, 13 Wright 23.

There was no privity between Baur and the parties to the original contract, nor could the assignment as against intervening creditors, operate as a ratification of any act done by Adams on behalf of Banker: Childs & Co. *v.* Digby, 12 Harris 23.

*Gustav Hahn,* for appellee.—The appellants show not a single equity in their favor, but invoke the aid of technicalities only to give them a preference over the appellee : Delaware & Hudson Canal Co.'s Appeal, 2 Wright 517 ; Ramsey's Appeal, 2 Watts 232 ; Dunn *v.* Olney, 2 Harris 223 ; Kyner *v.* Kyner, 6 Watts 221 ; Hugh Burns *et al. v.* Huntingdon Bank, 1 Barr 397 ; Erb's Appeal, *supra* ; Cottrel's Appeal, 11 Harris 294; Foster *v.* Fox, 4 W. & S. 94 ; Mosier's Appeal, *supra.*

Mr. Justice WOODWARD delivered the opinion of the court, May 6th 1878.

On the 30th of October 1874, Philip Banker obtained a judg-

ment in the Common Pleas of Luzerne against Jacob Adams for $700. He was the endorser of a note of Adams for the same amount, which had been discounted by the Wyoming National Bank, on the 7th of October, and the judgment was confessed in order to indemnify him against liability for its payment. The note matured on the 9th of December 1874, and on that day, in the absence of Banker, at the solicitation of Adams, and upon his assurance that Banker's judgment should be assigned to him for his protection, Robert Baur endorsed a new note of Adams' for $700, which was received by the bank in lieu of that which Banker had endorsed. This new note was renewed from time to time, and was finally paid by Baur. Banker assigned his judgment to Baur on the 4th of February 1875. In the meantime, on the 7th of December 1874, judgments against Adams were obtained by Webster & Goldsmith Brothers, the appellants. In the distribution the auditor applied the balance of the fund, after payment of earlier liens, *pro rata* to the judgment of Banker, and to one which had been confessed to Baur, both having been entered the same day. The court confirmed the auditor's report.

Banker had no part in the arrangement between Baur and Adams. His judgment had been obtained for a single purpose. It was to protect himself as the endorser of the note that was running in the bank. If that had been paid at maturity, all the uses of the judgment would have been served. So far as Banker was concerned, why was the note not paid when it was cancelled by the renewal? The judgment was a personal indemnity to him. It was not a collateral or cumulative security to the bank. It had no connection with the debt Adams owed, except that it had grown out of it as an independent contract. When the note of the 9th of December was accepted, the discharge of Banker from all obligation as an endorser was absolute, and with that discharge why were not his rights under the judgment at the same time extinguished? It has been urged that the debt survived. It is true that Adams remained the bank's debtor for $700, but he was bound by a new contract in a new form, with which Banker had no concern. And with the hazard that he might be called upon for payment of the note removed, the vitality of his judgment was destroyed. His assignment could not galvanize it into fresh life, for on the 4th of February 1875, he had no interest to assign. If the rights of Adams and Baur were alone involved, there would be no objection to their agreement that it should retain or regain its original efficacy. But nothing which they could do, even in conjunction with Banker, could affect the rights of intervening creditors, which became vested when, by the discharge of Banker as endorser, the conditions ceased to exist, which gave to the judgment all the validity it possessed.

Down to the moment when Baur endorsed the new note, he had

[Webster and Goldsmith's Appeal.]

not been in any way connected with the debt.   He was under no obligation to Banker, to Adams or to the bank.  While his endorsement worked the release of Banker, yet it created no duty towards himself, for as in Talmage *v.* Burlingame, 9 Barr 21, the act was without Banker's knowledge or request, and was done as a "mere volunteer, and under no circumstances of compulsion, moral or legal."   And· Adams was not competent to clothe Baur with Banker's rights, for that would have been the making a new consideration for and the writing of new conditions into the judgment. It was too late on the 9th of December to create a lien to have priority against other creditors from the 30th of October.

In no instance has the equitable doctrine of subrogation been carried to an extent that would support this decree.  Ramsey's Appeal, 2 Watts 228; Dunn *v.* Olney, 2 Harris 219, and The Delaware and Hudson Canal Company's Appeal, 2 Wright 512, which were relied on in the opinion of the president of the Common Pleas, were illustrations of Chief Justice GIBSON's familiar rule, that "he who may at law control the application of two or more funds, shall not be suffered to use his legal advantages in a way to exclude the demands of a fellow creditor whose legal recourse is restricted to but one of them."   Cottrell's Appeal, 11 Harris 294, was just the case this would be if the judgment against Adams had been held not by Banker, but by the Wyoming National Bank.   An endorser paying Adams's note would become entitled to subrogation to the rights of the bank under the judgment as a cumulative security for a single debt.   In Cottrell's Appeal, the endorser of the note of a defendant for the amount of a judgment paid it to the creditor, and took an assignment of the judgment.   It was very justly ruled that he was entitled to payment in preference to a subsequent judgment entered before the note was given.   "When an application is made for substitution," Judge ROGERS said, in·Erb's Appeal 2 Penna. R. 296, "the court will take care that the subrogation of the surety shall work no injustice to the rights of others."   While subrogation is founded on principles of equity and benevolence, and may be decreed where no contract exists, yet it will not be decreed in favor of a mere volunteer, who, without any duty, moral or otherwise, pays the debt of another : Hoover *v.* Epler, 2 P. F. Smith 522. It will not arise in favor of a stranger, but only in favor of a party who, on some sort of compulsion, discharges a demand against a common debtor : Mosier's Appeal, 6 P. F. Smith 76.   Chief Justice THOMPSON·in that case said :  "I regard the doctrine as applicable in all cases where a payment has been made under a legitimate and fair effort to protect the ascertained interests of the party paying, and when intervening rights are not legally jeopardized or defeated."  Taxes assessed against an owner of land were paid over during several years by the collector, without payment by the

owner to him.  Subsequently the owner confessed a judgment to the collector as a collateral security.  In the distribution of the proceeds of the sale of the owner's estate it was held that the lien of the taxes was discharged by the payment over by the collector ; that he was not to be regarded as a surety; that subrogation could not be allowed except in a clear case, and where it would work no injustice to others; and that the collector had no priority over liens which preceded his judgment : Wallace's Estate, 9 P. F. Smith 401. There was no privity of interest and no contract relation between Baur and Banker.  Baur could create no duty to himself by a volunteered intervention for Banker's relief.  He became Adams's endorser without being under any legal or moral compulsion, and he had no existing interest, ascertained or contingent, to protect. He has no equity to entitle him to subrogation.  At the moment when the new note was taken by the bank, and the liability of Banker on the former one was discharged, the only reason for the efficient existence of the indemnifying judgment was swept away, and the judgments of the appellants took the place it had held in the order of priority of·liens.

> The decree of the Court of Common Pleas is reversed at the costs of the appellee, and it is now ordered and adjudged that the residue of the fund in court, after the payment in full of the judgment of Robert Baur, No. 217, November Term 1874, be distributed, *pro rata*, to the judgments Nos. 240 and 359, November Term 1874, in favor of P. R. Webster and Goldsmith Brothers, the appellants.