## ESTATES TAIL AND FOR LIFE.

### Common Pleas Court of Hamilton County.

### CHARLES C. WILLIAMS v. JENNIE M. HALLER, AN IMBECILE, ET AL.

#### Decided, May 1, 1912.

*Wills—Construction of a Devise and "to the Heirs of Her Body in Fee" —Rule in Shelley's Case—Partition Proceedings Not Subject to Attack by the Parties Thereto or Their Privies—Purchaser at Partition a Grantee of the Parties—Title—Estoppel—Rights of Mortgagee as Against Parties to the Mortgage Who Were Without Title.*

1. A devise of real estate in Ohio, to A. C., "for the term of her natural life, and at her decease to go to the heirs of her body in fee," made by a resident of Ohio, after 1840 does not create an estate tail in A. C., but vests in A. C. an estate for life, with remainder to the issue of her body. The rule in Shelley's case can not be applied to declare such a devise an estate tail.

2. The rule in Shelley's case is a rule of property and not a rule of construction to be applied in the determination of the meaning of language in a grant or devise; and since the abolition of this rule in Ohio, as to wills, in 1840, it can not be invoked either as a rule of property or construction, to determine the character of the estate devised.

3. A decree or judgment in partition proceedings, finding the interest and title of the parties thereto can not be attacked or questioned in a subsequent action or proceeding instituted by any of the parties to the former proceeding or their privies, so long as the judgment or decree in the former action remains unreversed and in full force.

4. A deed in partition proceedings made by the sheriff in pursuance of a decree of the court, where all of the parties are duly and legally served with process or enter their appearance or answer to the merits, is the deed of the parties to the proceedings; and a purchaser under such a deed is to be regarded as the grantee of the parties to the partition proceedings. The transfer to the purchaser, in such a case, operates as a complete extinguishment of the title and interests of the parties to the partition proceedings.

5. Where persons, who do not have title to real estate, join in a mortgage to secure the payment of their own debt or the debt of any one of them, and in such mortgage warrant their title, by covenants of

general warranty, such a covenant is one that adheres to the land, runs with it, and is transmitted with the estate whether the same passes by descent or purchase.    Such persons are subsequently estopped, by their mortgage deed, as between them and the mortgagee and those who acquire title to the land through the mortgagee or his interest in the land, from setting up their want of title at the time the mortgage was executed.

6. A party who voluntarily takes the benefits of a judgment or decree in a partition proceeding will not be permitted in a subsequent action or proceeding to question the validity of the proceeding, findings or judgment.    He is concluded and estopped by the former judgment or decree.

*John Nichols* and *Wm. C. Lambert,* for plaintiff.
*E. P. Bradstreet* and *H. D. Peck,* contra.

GORMAN, J.

Decision on demurrers to amended answer and second amended answer.

This is an action in ejectment to recover specific real property under Sections 11901 and 11903, General Code (5779-5781, R. S.). The petition in substance alleges for a cause of action that plaintiff has a legal right to and is seized in fee simple of an undivided one-third part of the real estate described in the petition under the provisions of the last will of Peter McNicoll, who died April 21, 1852, and whose said will was admitted to probate and record on April 21, 1852, by the Probate Court of Hamilton County, Ohio; that by the fifth item of said will the testator devised to his daughter, Amanda Chamberlain (then Amanda Williams), mother of plaintiff and of the defendants, George J. Chamberlain and Ida M. Schuck (nee Chamberlain, *for the term of her natural life and at her decease to go to the heirs of her body in fee,* the property described in the petition, being part of in-lot No. 110 on the original plat of the city of Cincinnati on the west side of Main street, known as No. 309 Main street, Cincinnati, Ohio.    The petition further avers that said will of Peter McNicoll is in full force and effect; that Amanda Chamberlain died May 5, 1911, leaving as *the sole heirs of her body* the plaintiff and the defendants, George J. Chamberlain and Ida M. Schuck, who are tenants in com-

mon each owning one-third of said premises; that, by the eighth item of said will, the testator provided that:

"Should any of my children or grand-children, to whom I have made devises of real estate herein, die without children or grand-children living at their decease, it is then my will that the real estate so devised to them shall revert to and become the property of my heirs at law."

The petition further avers that the defendant, Jennie M. Haller, is an imbecile and the widow and sole devisee of John Haller, deceased; that the defendant, Edward Rockel, is her duly appointed guardian; that said Jennie M. Haller and her said guardian unlawfully keep plaintiff and his co-tenants out of possession of said premises and have so done since May 5, 1911, the date of death of Amanda Chamberlain, and have excluded them from the rents, issues and profits thereof. Plaintiff prays for judgment and restitution of the property, and for an accounting for the rents, issues and profits, and further for a partition of the premises as against his co-tenants.

The defendant, Edward Rockel, as guardian of the imbecile, Jennie M. Haller, has by his amended and second amended answer to plaintiff's petition set up, after denying certain averments, the following defenses to plaintiff's action.

First, he says that on February 4, 1891, Ida M. Chamberlain (now Ida M. Schuck), defendant herein, filed her petition in case No. 45359 in the Superior Court of Cincinnati for partition against the plaintiff, Charles C. Williams, Perry H. Williams (now deceased since March, 1911), George J. Chamberlain and Henry Rostert, alleging therein that she owned an undivided one-fourth of the real estate described in the petition herein, in fee simple, and also owned the life estate of her mother, Amanda Chamberlain, and that plaintiff in this action, Charles C. Williams, Perry H. Williams and George J. Chamberlain each owned an undivided one-fourth interest therein, subject to the life estate of Amanda Chamberlain, the mother, who was the same person described in the petition herein as having died May 5, 1911; that all of said parties to said action, including plaintiff, Charles C. Williams, were duly

served and brought into said case No. 45359, Superior Court of Cincinnati, and that on the 27th day of October, 1891, the court in said cause entered a decree and judgment therein finding that all of said parties had been duly and legally served, and that the allegations of the petition were true and that said real estate was owned by the said parties in fee simple, each having a one-fourth interest therein subject to the life estate of their mother, Amanda Chamberlain, therein, and that they were tenants in common and entitled to partition, and did order said premises to be duly partitioned by three commissioners appointed for that purpose under the direction of the sheriff of Hamilton county, Ohio; that partition could not be made without manifest injury to the premises and the same were returned appraised by said commissioners at their true value in money, and that thereupon the court confirmed said return and appraisement and ordered the sheriff to advertise and sell said property at public sale, free from the life estate of Amanda Chamberlain, none of the parties having elected to take said premises at the appraised value; that thereafter in pursuance of said order of sale, after having advertised the said property for thirty days, according to law, and the orders of the court, the said sheriff did on December 3, 1911, sell the said premises at public sale in fee simple and free from the life estate of Amanda Chamberlain to John Haller, the highest and best bidder, for the sum of $5,200, said sum being more than two-thirds of the appraised value thereof; that afterwards, at the December term, 1891, of said court, after full consideration, the said court approved and confirmed said sale and the proceedings of said sheriff and ordered said sheriff to make and deliver to said John Haller a proper deed for said property in fee simple and free from the life estate of said Amanda Chamberlain therein, all of which was accordingly done by the said sheriff, who executed and delivered to said John Haller his sheriff's deed in due form of law for said premises free from all the interest and claims of each and all the parties to said cause, of whom the plaintiff herein was one; and the said deed was duly recorded in the office of the recorder of Hamilton county, Ohio,

on March 3, 1892, in deed book 727, page 294. The defendant further avers that by reason of said proceedings and purchase, said John Haller became the owner in fee simple of said premises described in the petition herein, and in said petition in partition, and that Jennie M. Haller, as his sole devisee and heir at law, is now the sole owner in fee simple of said premises; that all the interest of plaintiff, Charles C. Williams, in said premises was divested by virtue of said proceedings in the Superior Court of Cincinnati, and since the execution and delivery to John Haller of said sheriff's deed, and that the same passed thereby to said John Haller, his heirs and assigns forever.

The defendant further averred in his answer that prior to the commencement of said partition suit, to-wit, on March 30, 1885, said Amanda Chamberlain and her four living children, Charles C. Williams, plaintiff, Ida M. Chamberlain (now Schuck), Perry H. Williams and George J. Chamberlain, and three of the parties to this action, executed and delivered to one Frank Bruner their mortgage deed for the said property herein, and in the will of Peter McNicoll, deceased, described and thereby conveyed the same and all their right, title and interest therein, with covenants of general warranty, to said Bruner, covenanting further for themselves, their heirs and assigns, that they were the true and lawful owners of said premises and had full power to convey the same, and that the title to said premises was clear, free and unencumbered and that they would warrant and defend the same against the claim or claims of all persons whomsoever; that said mortgage was given to secure a note and debt of all of said parties for $1,000, with interest at 8 per cent. per annum, and was duly acknowledged and recorded as required by law on April 2, 1885, in the office of the recorder of Hamilton county, Ohio.

The defendant further avers and sets up that afterwards, on June 28, 1888, all of said parties, Amanda Chamberlain and all her children, executed and delivered to one Louis J. Dolle, their certain second mortgage deed for said premises to secure their joint note and debt for $1,000, and containing all the covenants and warranties contained in the said mortgage to said Bruner;

that said mortgage was in regular and due form with cove-
nants of ownership in fee simple and general warranty, and the
same was duly recorded as provided by law in the office of the
recorder of Hamilton county, Ohio, on June 22, 1888.

Defendant further avers that both of said mortgages were
sold and assigned to one Henry Rostert, who was made a party
defendant in said partition suit, cause No. 45359, Superior
Court of Cincinnati, Ohio, and that he filed his answer and
cross-petition therein setting up both of said mortgages and the
notes secured thereby, and praying for the payment of the
same out of the proceeds of the sale of said partition premises;
that the court on final decree of distribution found said notes
and mortgages to be valid and subsisting liens on said real es-
tate, and ordered to be paid to said Rostert out of the proceeds
of the sale of said partitioned real estate the sum of $2,255.30,
the amount due and unpaid on said notes and mortgages.

Defendant avers further that by reason of said covenants of
seizin and warranty in said mortgage deeds and the declarations
of plaintiff and his co-defendants in said conveyances, and also
because plaintiff's said debts secured by said mortgages were
paid directly out of the proceeds of the said of said property,
plaintiff is now estopped to prosecute this action to recover
said real estate from this defendant or to assert any interest
therein.

The defendant for a further defense says that on February 2,
1891, Amanda Chamberlain for the consideration of $2,400 sold
and conveyed to her daughter, Ida M. Chamberlain (now
Schuck), plaintiff in said cause No. 45359, Superior Court of
Cincinnati, and now a defendant herein, her entire life estate
in the property which is the subject-matter of this action, and
the deed therefor is recorded in deed book 706, page 325, of the
deed records of Hamilton county, Ohio, and that at the time of
the commencement of said partition suit in the Superior Court
of Cincinnati said Ida M. Schuck (nee Chamberlain) was the
owner thereof as well as of her one-fourth part as devisee under
the will of Peter McNicoll, and was also said owner when the
sheriff's sale thereof was made to John Haller as above set
forth.

Defendant further says that after the sale to said Haller as aforesaid, the plaintiff, Charles C. Williams, together with his sister, Ida M. Chamberlain, and his brother, Perry H. Williams, and George Chamberlain, each for himself received from the sheriff of Hamilton county, Ohio, and receipted to him therefor, the respective sums of money found due them by the court and ordered to be paid to them by said court out of the balance of the proceeds of said sale of said real estate now sought to be recovered herein; and that by reason of said facts, plaintiff and defendants, George J. Chamberlain and Ida M. Schuck, are barred and estopped from asserting any claim or interest in and to the said real estate, or from recovering the same from said Jennie Haller.

Defendant further avers in his second amended answer that more than ten years have elapsed since the execution and delivery of said sheriff's deed to John Haller, under and through whom said Jennie M. Haller holds title, and before the commencement of this action; that said John Haller took possession of said premises immediately upon the receipt of said sheriff's deed and under the same, and that he and his assigns, including said Jennie M. Haller, have ever since held and enjoyed said premises under said deed and title without interruption, and the plaintiff has never taken any steps to have said deed reformed, canceled or modified, and it still remains the same as when delivered to said Haller, and that by reason thereof plaintiff's cause of action is barred by the statute of limitations. Section 11227, General Code.

Defendant prays that the petition may be dismissed and that Jennie M. Haller's title be quieted against plaintiff and against Ida M. Schuck and George J. Chamberlain, and that said Jennie M. Haller be adjudged the sole owner of said premises.

The defendant, George J. Chamberlain, answers, admitting all the allegations of the petition and joining in the prayer thereof. The defendant, Ida M. Schuck, enters her appearance, but has not yet filed her answer.

The plaintiff has demurred to the fourth, fifth, sixth, seventh and eighth defenses set up in the amended answer of Ed-

ward Rockel, guardian, and to the second amended answer of said defendant, on the ground that on their face these defenses are insufficient in law.

The demurrers search the record and, therefore, in determining whether or not the defendant has presented one or more good defenses to the plaintiff's action, the court may and should also examine the averments of the petition in connection with those of the answers, to ascertain whether or not on all the facts presented by the pleadings preceding the demurrers the action can be maintained.

The first inquiry is: what estate, title or interest passed to the plaintiff and his mother, Amanda Chamberlain, and the plaintiff's brothers and sister by the will of Peter McNicoll, deceased? The correct answer to this question will probably determine whether or not the plaintiff has now a good cause of action against the defendant, Jennie M. Haller, and her guardian.

It is claimed by plaintiff's counsel that the estate created and vested in Amanda Chamberlain was an estate tail. The language necessary to create an estate tail at common law before the promulgation of the rule in Shelley's case, was "to A and the heirs of his body," or such like words. The first taker was called the first donee in tail, and held the particular estate which endured for the life of the first donee in tail and no longer. The fee was vested in the first donee in tail by virtue of the grant or devise, and passed to his issue or the heirs of his body as an estate of inheritance upon the death of the first donee in tail. The issue did not take by purchase from the donor, grantor or devisor as the case might be. The difference between this kind of a fee and a fee simple is that it can not be aliened and is restricted in its course of descent at law to certain heirs—those of the body. See Blackstone Lib. II, *pp. 110 to 119 inclusive; Preston on Estates, Vol. 1, pp. 355 to 555 inclusive.

The incidents to a tenancy in tail were chiefly that he might commit waste; the wife had dower therein; the husband had curtesy of the estate tail; and the estate might be barred

or destroyed *by a fine,* by *common recovery* or by *lineal warranty* descending with assets to the heir.   *Blackstone,* Book 2, p. 116.

A life estate has none of these incidents and although a life estate may be of identically the same endurance as the particular estate held by the first donee in tail, nevertheless, there is ✓ a wide difference in the characters of a life estate and a particular estate in tail, or the estate of the first donee in tail.   When a life estate has been carved out and granted or devised to one, the remainder does not pass to those who take it *as an estate of inheritance from and through the life tenant,* but the remaindermen take *from the grantor or devisor directly* as an estate *by purchase* upon the death of the life tenant.   *The fee is vested in the remainderman,* and not in the life tenant, whereas as heretofore pointed out, the fee in an estate tail is vested by the grant or devise in the first taker, the first donee in tail, and passes *from him* at death by *operation of law to the immediate heirs* of his body.   In case of a life estate the life tenant can not commit waste without forfeiting his estate; the wife has no dower in such an estate; the husband has no curtesy therein; ✓ the estate can not be barred by fine or a common recovery.

Now the language of Peter McNicoll's will in item 5, which carries the title to the property under consideration, is as follows:

"I give and *devise to my* daughter, Amanda Williams (Chamberlain *for the term of her natural life, and at her decease to the heirs of her body in fee,* the following lot of land," etc. (describing the premises set forth in the petition.

This language *does not* create an estate tail by will; it is not to "Amanda Williams and the heirs of her body," but to her *for life,* and at her death to the heirs of her body. She has only a life estate with remainder to the heirs of her body.

By the application of the rule in Shelley's case this language will be construed to create an estate tail. This is a rule of property and not a rule of construction to be applied in the determination of the meaning of the language of a grant or devise. It is usually stated thus:

"Where a freehold is limited for life, and by the same instrument which creates the life estate, the inheritance is limited, either mediately or immediately, to *his heirs or to the heirs of his body, the first taker takes the whole estate,* either in fee simple, or in fee tail; and the words, 'heirs' or 'heirs of his body' are *words of limitation,* and *not of purchase."* *King v. King,* 12 Ohio, 390-471.

But the rule in Shelley's case was abolished by the Legislature of this state, *in its application to wills, in 1840,* twelve years before the probating of Peter McNicoll's will—Swan's Statutes, 999, Section 47 (now Section 10578, General Code), which reads as follows:

"When lands, tenements, or hereditaments are given *by will* to a person *for life,* and after his death to *his heirs in fee,* or words to that effect, the conveyance shall vest an estate *for life only* in such first taker and a remainder *in fee simple in his heirs."*

Now the first and most important rule of construction as applied to wills, is to take up the will by its four corners and endeavor to ascertain from an examination of all its parts and the conditions existing at the time of its execution, and the circumstances surrounding the making of the will and present to the testator at that time, the intention of the testator.

Plaintiff's counsel bottom their right to a recovery in this action on the proposition that the estate devised to Amanda Williams (Chamberlain) is an estate tail, and numerous authorities are cited in support of their contention that such is its character; and that therefore the plaintiff and his brothers and sisters had no right, title or interest in the property devised·by Peter McNicoll at the time of the partition suit in 1891, in the Superior Court of Cincinnati, and as a consequence nothing passed to John Haller, the purchaser, except the interest of Amanda, which endured no longer than her life and died with her; and they further claim that plaintiff is not estopped either by the record of the Superior Court case and the sheriff's deed to Haller, or by any act of plaintiff in accepting and receipting for his distributive share of the proceeds of the sale

to the sheriff, and standing by and permitting Haller innocently to purchase the property and pay over his money to plaintiff and his co-tenants.

Counsel for plaintiff in their oral arguments and in their briefs, have assumed and asserted that the estate which passed to Amanda and her children by this will was an estate tail, and this claim appeared to be acquiesced in by defendant's counsel; at least, there was no denial on their part of plaintiff's claim, in the oral argument. Upon the court's suggestion to counsel for plaintiff that the estate might not be entailed, plaintiff's counsel in their supplemental brief have cited the case of *King* v. *Beck*, 12 Ohio, 390, where the language used was almost identical with that employed by Peter McNicoll in the devise to Amanda, and point out that the Supreme Court in this case held that:

"A devise to A *for life*, and after his decease *to the heirs of his body*, and *failing heirs at his decease, then over*, is an estate tail."

Now there is no doubt in the mind of the court that the *fifth item of* Peter McNicoll's will taken *in connection with the the eighth item*, created the identical kind of an estate as the one in the case just cited, even to the *devise over*, for by the eighth item of McNicoll's will it is provided that on failure of *children or grandchildren of Amanda, living at her decease* there shall be a devise over to the heirs generally of Peter McNicoll.

But the case of *King* v. *Beck, supra*, was overruled by the Supreme Court on rehearing of the case, as appears in the later case of *King* v. *Beck*, 15 Ohio, 559; and upon a reversal the court there held that applying the rule in Shelley's case the estate was not an estate tail, because such a construction would defeat the manifest intention of the testator to devise a life estate only to the first taker. The former decision was squarely reversed and counsel no doubt overlooked this fact, or the case would not have been cited in support of their claim. Furthermore, it could not be an authority in support of the claim that

the estate involved in the case at bar is an estate tail, because that case, *King* v. *Beck,* arose before the rule in Shelley's case as to wills was abolished—before 1840—and it was then proper and the duty of the court to apply that rule; but in the case at bar we are precluded from applying the rule in Shelley's case even if its application would lead conclusively to the opinion that this is an estate tail. While this *King* v. *Beck* case was decided first *in banc* in 1843, a reference to the cases alluding to it will establish the fact that the rule in Shelley's case was applied only because the will was probated prior to 1840. See *Halley* v. *Hengstler,* 23 C. C., 504; *King* v. *Beck,* 12 Ohio, 390, second paragraph of opinion by Lane, J.; *King* v. *Beck,* 15 Ohio, 561-563; *Armstrong* v. *Zane,* 12 Ohio, 287-290; *Brockschmidt* v. *Archer,* 64 O. S., 502-514; *McDaniels* v. *Hays,* 6 C.C. (N.S.) 257.

So that if the case of *King* v. *Beck* is to be considered an authority as finally decided in 15 Ohio Reports, *supra,* it is an authority most strongly against plaintiff's claim that we are here dealing with an estate tail.

Now let us examine the other authorities cited by plaintiff's counsel to see if they are cases of estates tail without the application of the rule in Shelley's case; because, as has been pointed out, if the language employed does not create an estate tail in any of these cases, such case can not now be considered an authority in determining the nature of the estate devised to Amanda and the heirs of her body. These cases cited must stand, without the aid of the rule in Shelley's case, as an estate tail, in order to warrant the conclusion of the court found in each. We shall now show that these cases are all cases of *fee tail* and that in no one of them was the rule in Shelley's case applied, as must be done in the case at bar, to warrant us in concluding that we have before us a fee tail estate.

*Kline* v. *Dungan,* 81 O. S., 371, cited. The language creating the estate was as follows: "*To Elizabeth Wilson and the heirs of her body.*"

A fee tail pure and simple. No need here of applying the rule in Shelley's case. No life estate is granted to Elizabeth Wilson, but an estate in fee tail.

*Riddings* v. *Chaney et al,* unreported case, 81 O. S., 566, cited. From the facts set out in the record submitted to the court and in plaintiff's brief we find the following language employed to create the estate devised: * * * "that amount it is my will, *shall go to the said Hester and the heirs of her body,* the residue to go to the said Edward Chaney."

This is an estate tail by the very words employed; there is no life estate carved out, and there could be no application here of the rule in Shelley's case.

*Carter* v. *Grossnickle,* No. 326 C. C., Clermont county, and No. 327 same court; opinion of Common Pleas Court, 11 N.P. (N.S.), 465, cited. The language of the devise in this case was as follows: "To Hannah Carter and *the heirs of her body,* 110 acres of land," etc.

This is clearly an estate tail by the express words and not by the application of the rule in Shelley's case, and we are not aided by the decision of the learned court in this case, in solving the problem before us.

We have not examined the cases cited by the plaintiff from other states and the federal courts, because the rule in Shelley's case may be in full force in those jurisdictions, and if it is these decisions would not aid us. If the rule as to wills was not in force in these jurisdictions where these cases arose, then we venture to say that the cases will all be found to rest upon the fact that an estate tail was created in each case *by the express words employed* without the application of the rule in Shelley's case.

*Elrod* v. *Bass,* 1 C. C., 38, has been cited, but the court in that case was not dealing with a fee tail, but with a life estate to Cynthia Elrod, remainder to her heirs. If the rule in Shelley's case could have been applied—as it could not—this would have vested in Cythia Elrod a fee simple estate, but the court did not and could not apply it, but held that according to the intention of the testator, the heirs took the remainder, and inasmuch as the heirs could not be determined during the life of Cynthia Elrod, no partition could be adjudged during her life *without the consent of all of the remaindermen or reversioners.*

This case does not assist the court, because the partition case in the superior court, among Amanda's heirs was consented to by all the parties except plaintiff, and not objected to by him, although he was a party defendant, was served personally and had a copy of the petition served upon him, thereby having full notice of the nature of the case and the prayer of the petitioner.

Other cases alluded to by counsel for plaintiff and cited in some of the decisions commented upon by plaintiff's counsel on the question of an estate in fee tail are the following: *Pollock* v. *Speidel,* 17 O. S., 440, and the same case, 27 O. S., 86.

The language of the *grant* creating the estate in the Pollock cases—for the estate was created there, by deed—was: ''To the said James Pollock, the *heirs of his body* and assigns forever''— a clear estate tail by the words of the grant. Furthermore, the rule in Shelley's case would apply here, because the estate was not created by will, and it is abolished *only as to wills.* The only value these cases have for us in their application to the case at bar, is to note the nature of an estate tail, as defined by the courts therein.

In the case of *Harkness* v. *Corning,* 24 O. S., 416, it was held that the words, ''To my granddaughter, Sarah Harkness, daughter of Charles Harkness and her issue'' in a will were the equivalent of to my granddaughter, etc., and the heirs of her body, and that an estate tail was thereby created.

This conclusion is undoubtedly sound law, and it squares with the rule of the common law in holding that *''issue of the body''* is a phrase synonymous with ''heirs of the body.''

No case will be found in Ohio since the abrogation of the rule in Shelley's case as applied to wills, which holds that a devise which carves out a life estate and devises the remainder to heirs, or heirs of the body, or any such similar language, can be construed to create a fee simple or a fee tail in the tenant for life, the first taker.

What then is the nature of the estate devised to Amanda Williams and the heirs of her body by the will of Peter McNicoll?

Taking up the whole will by its four corners and examining all the provisions thereof to ascertain the testator's intention,

we note that by the eighth item of the will the testator declares what shall become of the devises in the contingency of the failure of children, or grandchildren of any of the dev-isees.   Now he made devises to several of his children and to *two of his grandchildren,* Virginia and Sarah Howell, and the language in each and every devise is the same; .to the devisee, *for the term of her natural life and at her decease to go to the heirs of her body."*

By the eighth item of the will he provides that:

"Should any of my *children or. grandchildren* (the two classes named in the will) to whom I have made devises of real estate herein die without *children or grandchildren living at· their decease,* it is then my will that the real estate so devised to them shall revert to and become the property of my heirs at law."

Applying this provision to Amanda, and her devise of the Main street realty, it must be manifest that in the event of Amanda dying, without leaving, *living at her death,* children or grandchildren, *then there is devise over to the heirs* generally of the testator.   The remainder after the termination of the life estate of Amanda by the fifth item of the will would go in an in-definite course to the heirs of her body; but when we give ef-fect to the provisions of the eighth item of the will—as we are bound to under the first essential canon of construction as ap-plied to wills—it will be seen that the remainder is limited to the children and grandchildren of Amanda, and in default or on failure of children or grandchildren, then over to the heirs generally of the testator.   This limitation is inconsistent with the nature and character of an estate tail, general, which must con-tain no limitation as to duration of time or of the heirs of the body of the first donee in tail.   So that, consideriing the case from this viewpoint, it appears certain that even with the aid of the rule in Shelley's case, if this rule could be invoked, the claim of plaintiff that the devise is an estate tail, must fail.

The court is of the opinion that when all· the parts of the will which shed light on the testator's intentions are considered, it will be found that this devise is an estate *for life to Amanda,* with a *vested remainder in fee* to her *children and grandchil-*

*dren,* subject to be divested by the death of any *child or grand-child* before the decease of the life tenant, Amanda. The enjoyment and possession of the remaindermen is postponed until Amanda's death. There can be no doubt that the testator intended to give a life estate to Amanda and no more. He says so, in express unequivocal language. It is also manifest that the testator's intention was that after her death the property should go to her children, or if they should all *then* be dead, it should go to her then living grandchildren. This is clear from the eighth item of the will. But if her children and grandchildren have all died before Amanda, and there were great grandchildren then living, they would not take the estate except as heirs generally of Peter McNicoll, because in that contingency the devise over is to his *heirs at law.* Bearing in mind the provisions of the eighth item of the will, the persons to whom the estate was to go on the death of Amanda, was not to the heirs of her body unlimited, but to a *limited line* of the heirs of her body, to the children and grandchildren only. The succession was to stop there, and in default of children or grandchildren living at Amanda's death, the sucession was to be diverted from the line of the *heirs of her body* to the *heirs generally of the testator.* Amanda's great-grandchildren were cut off by the devise over, and they would take nothing of this estate, unless and except, as heirs generally, *not of Amanda, but of the testator, Peter McNicoll.*

The language of the testator in the fifth and eighth items of the will clearly indicate that the persons who are to take the estate in remainder after Amanda's death, were to take *by purchase from the testator and not by descent* from Amanda, the life tenant. The testator created a remainder by purchase in the children and grandchildren of Amanda and by the devise over, in his *heirs at law.* The words, *heirs of her body,* in the fifth item of the will, when considered in connection with the language of the eighth item, were used as *descriptio personarum,* meaning children and grandchildren, who should take the remainder by purchase *from the testator,* and not by descent from Amanda. *Bunnell* v. *Evans,* 26 O. S., 409.

We think this conclusion is fully sustained by the following authorities:

*Halley* v. *Hengstler*, 23 C. C., 504-509, where the court says:

"It is true, as said by counsel for plaintiffs, if the will provided that after the death of John and Nathaniel, the land should go to certain named persons, or even if a person or class of persons were designated, as *'children,' 'grandchildren,' 'issue,'* of the like, it would carry no more than life estate to John and Nathaniel with remainder to such persons or class, etc.

"As pointed out, there is a wide difference where use is made of the *general collective* term heirs, signifying all who might inherit from the first taker, *ad infinitum.*"

Could language be more adaptable to the case at bar than this? See, also, *Foster* v. *Wick*, 17 Ohio, 250; *Jeffries* v. *Lampson*, 10 O. S., 102-104, where the court says:

"We are of the opinion that by this language, a remainder in fee (after the determination of the life estate of the mother) was vested immediately in William and Henry (sons of the life tenant) in equal moities of the premises in common; such vested remainder, however, being subject to be divested upon the contingency expressed, to-wit: the death of either during the life of the mother (the life tenant)."

*Taylor* v. *Foster*, 17 O. S., 166; *Collins* v. *Collins*, 40 O. S., 354. This was a case where the testator devised a life estate to his wife and then provided:

"At the death of my said wife the real estate aforesaid * * * I give and devise to my two sons, Silias and William Collins and their *heirs.* If, however, either of said sons should die leaving *no children* at their decease, then the share of said property above devised to such son is to go into the possession of the surviving son. If in case both of my sons * * * should die leaving no heirs, then the property above described to be equally divided among my heirs. * * * *Held:* That by the will the sons, Silas and William, each took a vested remainder in fee simple in one undivided half of the lands, *defeasible* upon the contingency of the death of either leaving no children at his decease, and leaving the other brother to survive him."

In this case it was contended as in the case at bar, that the testator intended to create an estate tail and that the children of Silas Collins inherited the fee in the premises set off to William by partition, should he die leaving no children. But the court held otherwise, as above set forth.

See also, *Poor* v. *Hart,* 11 N.P.(N.S.), 49, a strong decision by Judge Swing, affirmed by the Supreme Court.

The case, *Taylor* v. *Taylor,* 63 Pa. St., 481-488, is a case very much like the one at bar, providing for a devise over in case of the death of a daughter leaving no issue, before the death of her mother, the life tenant, the issue to take the daughter's share, if there should be any, and if none, then to the children of the testator's wife's sister. *Held:* That the children took a remainder.

See also, *Peer, Excr.,* v. *Hennion,* 77 N. J. L., 693; *Kemp* v. *Reinhard,* 228 Pa., 143.

In this case the court says in pointing out that the rule in Shelley's case can not apply, although it was in full force in Pennsylvania and not abrogated as to wills, as in Ohio:

"But what defeats the application of the rule in Shelley's case is the unmistakable intention of the testatrix, not only that Jacob was to get *only a life estate,* but that *after his death the remainder should not pass by devolution from him* (Jacob) *to his heirs, but directly from her* (the testatrix) to a designated class or to a designated individual. Her words are: 'After the decease of said Jacob E. Kemp, I give and devise the above described seven tracts or pieces of land devised to him herein for life to *his issue in fee.* Should he, however, die without leaving issue, I give and devise the same unto my son Pierce G. S. Kemp, his heirs and assigns forever.''

Being of the opinion, therefore, that the children of Amanda Chamberlain took a vested fee simple in remainder, subject to be divested by the death, before that of Amanda, of any one or more of them without leaving *children* surviving them, the next inquiry is what was the effect of the partition suit in the Superior Court of Cincinnati upon the title to this property. Could the parties to that action maintain it, the life estate having been acquired by Ida M. Chamberlain, the daughter, by purchase

from her mother, and she and her brothers owning each an un-divided one-fourth interest therein in fee simple, in remainder, subject to be divested by the happening of the contingency of dying before the mother without children?

In *Bass* v. *Elrod*, 1 C. C., 38, it was decided that:

"If one of the remaindermen, or reversioner is also the owner of the life estate in the whole premises, he may maintain such an action (partition), and if his interest therein can be set off to him without injury to the value of the residue of the estate, it may be done.   *   *   *   Nor ought there to be a sale of the premises subject to said life estate if it can not be divided *without such consent* (of the remaindermen).   *   *   *   If the *owner of the life estate* agrees to the sale of the premises *free* of his life estate therein and consents to take the value thereof in money, to be fixed or ascertained by the court, we are of the opinion that such sale may be had if it appear to the court that it will not be to the prejudice of the other parties in interest."

Is not this precisely what Ida Chamberlain and her brothers did in their partition case? She brought the action, asked to have the value of her life estate ascertained and allowed to her in money, and that the premises might be sold free from her life estate, and two of her brothers by answer admitted the allegations of her petition and joined in the prayer. The plaintiff did not answer or join in the prayer, but he was served personally with a summons and a *copy of the petition*, and apprised of the time to answer. He was in default for answer, made no objection to the partition or sale; acquiesced therein by silence, and took his proper share of the proceeds of the sale from the sheriff. Failing to object when he had the opportunity to do so, and if he wished to preserve his rights, should have done so, we think he has brought himself within the rule laid down in the case of *Bass* v. *Elrod*. The court, on page 40, in the fourth paragraph says:

"Nor is he now entitled to the partition (during the life of the tenant for life) of said second tract *against the objection of any one of the remaindermen,*" etc.

*Non constat* if no one of the remainder *objected*, could not partition have been maintained? The court believes it could have been.

It appears to the court that counsel for the parties in the partition case in the Superior Court of Cincinnati were familiar with this *Bass* v. *Elrod* case, and shaped their pleadings, proceedings and action to conform to the rules laid down therein.

The right to maintain a partition suit where the outstanding life estate has been brought in by one of the remaindermen by consent of parties, has been approved, confirmed and established in this state in the cases of *Morgan* v. *Staley,* 11 Ohio, 389; *Tabler* v. *Wiseman,* 2 O. S., 208; *Toledo Loan Co.* v. *Larkin,* 1 C.C. (N.S.), 473.

In view of these authorities and on reason, the court is of the opinion that all the right, title and interest of the parties to this partition suit in and to the property sold to Haller, passed to him by the sheriff's deed, and that Haller took a fee simple title to the property.

It might be sufficient to rest the decision of this case upon the grounds above set forth, but in addition to the reasons given why this action can not be maintained by plaintiff, it further appears by the defendant's answer that the plaintiff, even though he did not have a vested remainder in this property, is estopped to deny it by the record of the partition suit and by the record of the two mortgages given by him and his brothers and mother and sister, which mortgages contained covenants of general warranty that he and those joining with him were the owners in fee simple of the property, and these covenants *run with the land* and enure to the benefit of the purchaser thereof; and he is further estopped by his acts and conduct and may not in a collateral proceeding, such as this, attack the record of the partition suit, to which action he was a party; and he is bound and concluded by the record thereof.

Now the answer filed herein discloses that, in the partition suit in the superior court, to which plaintiff was a party and duly served with notice of the pendency and prayer of the petition, the court found and decreed that said real estate described in the petition in this cause, and the same property therein described and asked to be partitioned, was owned in *fee simple* by the parties to said cause, one-fourth thereof by the plaintiff.

Said judgment and decree stand unreversed and unmodified, and plaintiff being a party thereto is bound and concluded by the decree, and estopped by the record thereof to deny the finding as to his title to the property.   It was decided in *Hixon* v. *Ogg*, 53 O. S., 361, that where issue has been joined on a material fact in an action and the issue judicially determined and carried into judgment by a court having jurisdiction of the action, the *parties to such action* are concluded by such finding until the judgment is reversed or set aside.   And the fact thus established can not be *retried* by the same parties in any subsequent action, whether the second action is upon the *same* or a *different* subject matter from the first.

See, also, *Covington & Cin'ti Bridge Co.* v. *Sargent*, 27 O. S., 233, where it was held that not only is the judgment conclusive and binding as to all matters that were litigated and determined, but it is also conclusive as to all matters which *should have been determined;* and further, that not only are the *parties* to the action bound and concluded, but their *privies* are also bound. If the subsequent action be the same as the first the parties and their privies are barred from maintaining the second action; but where the second action between the parties and their privies is upon *a different claim* or demand, the judgment in the prior action operates as an estoppel only, as to matters in issue or points controverted, upon the determination of which the finding was rendered.   Now it can not be denied that it was necessary for the court to find in the partition case that plaintiff and his brothers and sister were the owners of the property in controversy and entitled to the immediate possession, as a predicate to a decree in partition.

See, also, *Cincinnati* v. *Emerson*, 57 O. S., 132; *Ewing* v. *McNair & Claffin*, 20 O. S., 15; *Swensen* v. *Cresop*, 28 O. S., 668, where it is said that it is a principle of general application that a party defending, is bound to set up all matters which are strictly matters of defense.   He can not remain silent and afterwards set up a claim which he might and should have made in the action to which he was a party.

In *Herman on Estoppel*, Vol. 1, pp. 303 and 304, it is laid down as a rule that parties to a partition suit will be estopped

to deny the findings and decree, or the recitals of the pleadings where they have been duly served and have an opportunity to be heard; have had their day in court.

In *Wood* v. *Mather*, 38 Barb. (N. Y.), 473, it was held in a case similar to the one at bar, that:

"Where an adult co-tenant of lands joins in a petition for the sale thereof and such petition alleges that the legal title thereof is in an infant co-tenant, and a sale is made in pursuance of such petition, the order of sale will estop the adult from *questioning the title of the purchaser* of the lands at such sale."

The deed in partition is made by the sheriff under an order of sale in partition and is the *act of the parties* themselves, and a purchaser at such sale is regarded as a *grantee.* The transfer to the purchaser is a *complete extinguishment of the title* of the parties to the action. *Herman on Estoppel,* Vol. 1, 304; *Pentz* v. *Kuester,* 41 Mo., 447; *O'Neal* v. *Duncan,* 4 McCord (S. C.), 246.

In the case above cited, *Pentz* v. *Kuester,* plaintiff leased to defendant the premises in dispute, for one year, and gave him possession. Before the expiration of the lease, all the interest of the plaintiff in the land was sold and conveyed to one Brecker under a decree in partition and order of sale, to which action plaintiff, the lessor, was a party claiming as tenant in common with other parties. The plaintiff afterwards brought this action *in forcible entry and detainer* against the lessee, who relied upon the sheriff's deed and the record in partition and a new lease from the purchaser, Brecker, at the partition sale. *Held:*

"A judgment estops the parties to the suit and all persons claiming in privity with them. The deed made by the sheriff under the order of sale in the partition case is the act of the parties themselves, and the purchaser at such sale is to be treated as a grantee within the meaning of the statute."

On page 450 the court says:

"The proceedings in partition were binding and conclusive upon all the parties to the record and upon those holding under them afterwards; and the plaintiff was estopped from denying

that his title and right to possession had been extinguished by the transfer of both to the purchaser at the partition sale." Citing *Owsley* v. *Smith*, 14 Mo., 153; *Forder* v. *Davis*, 38 Mo., 115.

"It was a sale by the act of the parties themselves as well as by the judgment of the law, and not a sale *in invitum* like an ordinary sheriff's sale under execution. The partition was had upon the petition of the plaintiff, and the sheriff's deed in partition must stand upon the same footing here as if it had been a voluntary conveyance of the title by the plaintiff himself. The purchaser will be considered as a grantee within the meaning of the statute."

In *O'Neal* v. *McCord, supra,* it is held that:

"Where a tract of land was sold under execution by the sheriff, in an action against the defendant in trespass to try the titles, by the purchaser against the defendant, the defendant will not be permitted to give evidence that the title of the land was not in himself but in another whose tenant he was. The sheriff's title (being the organ of the law to convey the defendant's right) is considered as the deed of the defendant and operates as an estoppel."

The difference between the case at bar and the Chaney case is this: In that case there had been a judgment rendered on a note—no mortgage. The land and the title thereto were not drawn in question in the action to recover the judgment. The judgment creditor then levied upon the lands to satisfy his judgment. There was nothiing in the record to show that the judgment debtors were the owners of the land, or that they claimed to be the owners. They were merely silent and allowed the sheriff to sell the property under the execution without seeking to prevent the sale—merely standing by. This was purely a proceeding *in invitum,* and not a voluntary proceeding as in the case at bar, where the initiative was taken by plaintiff's co-tenants and the property sold at the suit of the parties. It was only sought in the Chaney case to apply the rule of estoppel *in pais* or estoppel *by silence,* but if they had in that case undertaken to partition the property during the lifetime of the tenant for life and it had been sold and a sheriff's deed given, or if they had given a deed *without a warranty,* they might even have been

estopped by their acts and conduct. This is intimated in the statement of the Kline case, 81 O. S.

In the case at bar, the sheriff's deed to Haller carries with it every right, title and interest which the parties had at the time of the sale in the premises, including plaintiff's rights, and not only all the right, title and interest which they actually possessed, but *all those which they claimed in their pleadings and proceedings* to own—and this included a claim to a *fee simple title in remainder,* so found to be in them by the decree of the court.

Again as to the two mortgages executed with a covenant of general warranty in each and which were satisfied out of the purchaser's (Haller) money, *not as a voluntary payment,* but by decree of the court, how stands the plaintiff as to these warranties even though he had no title or interest in the land?

In *Herman on Estoppel,* Vol. 2, p. 796, we find this rule laid down:

"A person who, contracting an obligation to another, grants a mortgage on property of which he is not then the owner, the mortgage is valid if the debtor ever afterwards acquires the ownership of the property by whatever right. That is, a subsequently acquired legal title by the mortgagor inures to the benefit of the mortgagee." *Boyd* v. *Longworth,* 11 Ohio, 235; *Philly* v. *Sanders,* 11 O. S., 490; *Bond* v. *Swearingen,* 1 Ohio, 395.

Now the warranties in both these mortgages are covenants that *run with the land* and bind the warrantors or grantors of whom plaintiff was one, and inure to the benefit, not only of the mortgagee and his privies, but to those who may thereafter acquire the property, to all grantees of the land. Mark this language of the court in the case above cited, 11 O. S., on page 496:

"An obligation of estoppel binds not only the grantor in such case, but his heirs and subsequent grantees and all privy to him. *It adheres to the land, and is transmitted with the estate whether the same passes by descent or purchase. And the estoppel becomes and ever remains, a muniment of title so acquired; and when the party so estopped conveys the land, he necessarily conveys it subject to such estoppel in the hands of his grantee.*"

Now bearing in mind what has been shown to be the nature of the title conveyed by sheriff's deed in partition cases and that the conveyance is really the grant of the parties to the partition suit, is not Haller a grantee of plaintiff's and does not the estoppel arising from the warranties made in the two mortgages adhere to the land as well as run with it and in favor of the mortgagees? Does it not also run to the *subsequent grantee* of plaintiff, Haller, and inure to his benefit as a *muniment of title to the land forever?* A subsequent purchaser of mortgaged property in good faith is protected. *Teft* v. *Munson*, 57 N. Y., 97; *Laughlin* v. *Vogelson*, 5 C. C., 407.

But the decree of the court on distribution found the amount due on the mortgages and that they were a lien on the property, and ordered them paid out of Haller's money. Were Haller and those holding under him subrogated to the rights of the mortgagees? It is claimed by plaintiff that Haller was a mere volunteer in paying off the mortgages and that there was no privity between him and the mortgagees. The cases of *Webster* v. *Goldsmith*, 86 Pa., 409; *Kitzmiller* v. *Van Rensellar*, 10 O. S., 63, and *Jewett* v. *Feldheiser*, 68 O. S., 525, are cited and relied on as supporting the claim that Haller, the purchaser of the property in the partition suit, was a mere volunteer in paying off the two mortgagees and that there was no privity between him, Haller, and the mortgagees. We do not think these cases are analogous to the case at bar.

In the Pennsylvania case, 86 Pa., a superintendent of the work of construction on a railroad voluntarily paid off claims against his company and merely to befriend the workmen. Of course in this case there was no obligation on his part to pay the claims, he took no assignment of them, and made no agreement that he was to stand in the workmen's shoes. He derived no benefit from these payments. There could be no subrogation here.

In the 10th O. S. case, a judgment creditor sought to hold the wife's dower interest in her husband's property under his judgment. The judgment was not against her, it did not represent her debt; she did not release to the judgment creditor and he of course was not in privity with her. Her dower could not be thus taken.

The same state of facts appear in 68 O. S.  It was sought to sequester the wife's dower in real estate, after the action was barred by the statute of limitations, by a judgment creditor on a claim against the husband alone. The court held that because some of the proceeds of the sale on execution went to pay off a mortgage given by the husband and wife, the wife was not thereby estopped.

We think that the rule to be applied in the case at bar where Haller's money was paid out by order of the court to satisfy the mortgages, and the indebtedness of the plaintiff and his brothers and sister, and to *benefit Haller* by *clearing his land then purchased, of the liens,* is the rule laid down in *Jones on Mortgages,* Section 869, where it is said:

"If a mortgage be paid by a person not personally liable, for *the purpose of protecting his estate,* he may have the benefit of it in aid of his title without any assignment to him, or proof of any intention on his part to keep it alive."

See, also, *Joyce* v. *Dauntz,* 55 O. S., 538; *Sheldon on Subrogation,* Section 12; *Amick* v. *Woodsworth,* 58 O. S., 86.

Under these authorities, even if Haller personally volunteered to pay off these mortgages, he had an interest in the property by his purchase and would be subrogated to the rights of the mortgagees after paying them off.  But even though Haller's widow be subrogated to the rights of the mortgagees, this would not defeat the plaintiff's claim in this case if he had the right otherwise to prosecute this action, because there was paid out on account of these mortgagees only about $2,200, whereas the property sold for something like $5,200.

Upon careful consideration of the point raised as to the receipt by plaintiff of his distributive share of the proceeds of the sale of the land under the partition proceedings, upon the court's order of distribution and out of Haller's money, which sum he had retained and not offered to repay, it appears to the court that, in the language of Judge Ranney in *Tabler* v. *Wiseman,* 2 Ohio State, on page 216:

"A party ought not to be permitted *voluntarily* to take the benefits of a judgment and then attempt to reverse it.  No more

direct affirmance of the validity of the proceeding could be made, than by claiming title to the money of the adverse party received in pursuance of it.''

Now while this is not an effort to reverse the decree in partition in the Superior Court of Cincinnati, it is a more irregular proceeding in that it attempts to avoid the decree and its effect upon the plaintiff by a collateral attack upon the proceedings. If the plaintiff could not retain his share of the money paid by Haller for the estate claimed by the parties to the partition suit, and at the same time prosecute error to reverse the judgment to which he was a party, how much less can he maintain this action which ignores the decree in the partition suit?

It is further claimed by the defendant that the statute of limitations, Section 11227, General Code, has run against plaintiff—ten years since the execution, delivery and recording of the sheriff's deed to Haller. This action was begun almost twenty years after the recording of Haller's sheriff's deed. Now the sheriff's deed conveyed to Haller the *legal title in fee simple*. If it be claimed by plaintiff, as he must claim in order to stand at all upon his petition, that nothing more than an estate for the life of Amanda Chamberlain passed, or could have passed by the sheriff's deed to Haller, why is he not barred?

In the case of *Brockschmidt* v. *Archer*, 64 O. S., 502, an estate similar to that involved in the case at bar was under consideration. A mortgage had been given by the life tenant. The mortgage conveyed the premises in fee simple with covenants of warranty. The obligation not having been paid, the mortgage was foreclosed and a *decree entered for the sale of the life estate*. The land was sold, the sale confirmed and a deed in *fee simple* was made to the purchaser by the sheriff. The purchaser took possession under this deed, and he and his successors in title, of whom defendant Brockschmidt, was the last, continued to occupy the land openly, notoriously and exclusively for forty-two years. The court held that plaintiff's action of ejectment, being the same kind of an action as the one at bar, could not be maintained. On pp. 515 and 516 the court says:

''The sheriff's deed, notwithstanding the fact that only a life estate had been ordered sold, was made in pursuance of the order of the court and conveyed to the purchaser the legal title in fee simple; and without a reformation, the plaintiff can not recover the land against one having the legal title. They have but an equity at most. They did not ask for a reformation of the deed, and a recovery on it as reformed; and had they done so, the defendant might well have pleaded the statute of limitations to such an action. The deed was executed in 1852, and the purchaser went into possession and he and his successors in title down to and including the defendant have ever since been in the open, and notorious adverse possession of the land, claiming title in fee simple. The right to reform the deed accrued to the mortgagor on the execution of the deed, *for it deprived him of his reversionary* estate in the land, which he might otherwise have disposed of for value, although it could only take effect in possession on the termination of his own life. * * * When Edward died in 1893 (this was one year before the action was commenced in ejectment) *his heirs simply stepped into his shoes,* with the same rights in regard to the land as he had at death.''

The statute which applies to a case of this kind is Section 11227, General Code—ten years statute.

To be sure if the estate devised by Peter McNicoll to Amanda were a fee tail, then the rule laid down by Judge Minshall in *Ream v. Walls,* 61 O. S., 131, at page 146, would apply here. But inasmuch as we have found that it is not a fee tail, but a life estate in Amanda with remainder to her children, we are of the opinion that this case falls under the rule in *Brockschmidt v. Archer, supra.* If plaintiff allowed more than ten years to elapse before bringing his action for a reformation of the sheriff's deed which should have conveyed *only a life estate,* and not the fee simple, then it would appear that he is barred. The court is not, however, sufficiently clear as to the application of this statute to the case at bar, to rest this decision thereon, but prefers to base it upon the other grounds herein set forth.

In conclusion, the court feels that the plaintiff is not entitled to any great amount of equitable consideration at the hands of the court. He seeks in this collateral attack to avoid the effect of a former decree in partition, to which he was a party. He

stood by and allowed an innocent man, now dead, to pay into court the full value of this property; received the full benefits of Haller's money in paying his (plaintiff's) mortgage indebtedness, and received and still retains his full share of the proceeds of the sale of this property, on the basis, claim and representation of a one-fourth interest in fee simple in remainder being vested in him. He has not made restitution of this money or offered to restore it to the imbecile defendant, widow of John Haller. If he had owned the property at the time it was sold, to the same extent that he now claims to own it, he could not have realized more out of it than he did, except the additional share of the value of his mother's life estate, which went to his sister, Ida Chamberlain. The conduct of the plaintiff does not appeal to the moral sensibilities of a chancellor; on the contrary, his attitude toward the defendant, with full knowledge of what he has done to put her in her present deplorable financial condition by taking from her dead husband his own fair share of the value of this property, is shocking to the conscience of the court. Unless, by some *rule of law*, the court is bound to take away from Mrs. Haller, a poor imbecile, unconscious of what is being done against her, this property, then the case is one which does not appeal for favorable consideration in any forum where justice should be administered. No such rule can be found.

The demurrer to the amended and supplemental answers will be overruled, as they present a complete defense to this action.