In Re: Estate of William Stachokus, Deceased.

Argued March 6, 1933.

Before TREX-
LER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER and JAMES, JJ.

*A. Floyd Vosburg,* and with him *A. A. Vosburg,* for
appellant.

*Cornelius B. Comegys,* and with him *Harry Needle,*
for appellee.

PER CURIAM, April 17, 1933:
Stachokus, who boarded with the appellant, Mrs.
Balinas, was killed in the mines. A wife who resided
in Lithuania survived him there being no children.
Mrs. Balinas as a volunteer caused a tombstone and
urn costing $625 to be placed on the grave of the

decedent and paid for the same taking an assignment of the claim. Subsequently there was an administrator appointed who stated an account and at the audit of the same, Mrs. Balinas presented a claim for the money she had expended for the tombstone and urn. This was properly rejected by the auditor for there was no testimony produced, which would bind the estate. Mrs. Balinas ordered the memorials to the deceased on her own motion and without any authority from the administrator, the tombstone and urn, as stated above, having-been purchased before letters of administration were granted. After the audit was closed and before the report was confirmed absolutely, counsel for Mrs. Balinas presented a petition stating that the widow of Stachokus had written a letter to the appellant in which she had asked her to look after matters and "to purchase a monument," and that the court should apply the equitable principle of subrogation and deduct from the sum distributed to the widow the amount expended by the claimant and award the same to her. In proof of the fact that the widow was indebted to the claimant for the money expended, the letter above referred to, was produced. This does not bear out the contention of Mrs. Balinas, that there was any direction "to purchase a monument." We quote what was written in this regard: "Furthermore, you mentioned about the $2,000 insurance money, from which you deducted the expense of casket and burial. Please pay everything and whatever is left, send to me at once." If from this indefinite direction we might infer an authorization to purchase a monument, we cannot see how the orphans' court could adjust the matter. We quote from the opinion of the lower court:

"The claimant discharged an obligation for which the widow was not primarily liable; she was the primary obligor, for she ordered the articles in question and contracted the bill of her own volition.

"While subrogation is founded on principles of equity and benevolence and may be decreed where no contract exists, yet it will not be decreed in favor of a mere volunteer, who, without any duty, moral or otherwise, pays the debt of another, but only in favor of a party who, on some sort of compulsion discharges a demand against a common debtor: Webster's Appeal, 86 Pa. 409, 412; Campbell v. Foster Home Assn., 163 Pa. 609, 635.

"The claim of Mary Balinas is a contract right of action, not involving the distribution of the estate or its administration, in any phase, and is therefore not within the jurisdiction of the orphans' court, which court cannot pass upon the sufficiency of a cause of action based upon an independent contract alleged to have been made between the boarding mistress of the decedent and his widow.

"Whether or not the claimant could recover in an action at law is not a matter for this court."

The orders of the court dismissing the exceptions to the account and dismissing the petition for subrogation are affirmed. Appellant to pay the costs.